### In re Frank D. Miner Estate

[282 A.2d 827]

No. 168-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed October 5, 1971

*Robert H. Brown,* St. Albans, for Estate.

*Lee·E. Emerson,* and *William R. May,* Barton, for Marion Hilliker, Mildred Hancock, and Others.

**Keyser, J.** The main thrust of this appeal involves the interpretation of the residuary clause of the last will and testament of Frank D. Miner in which he directed the disposition of the shares bequeathed to his named brothers and sisters.

The residuary clause of the will executed on May 4, 1959, provided as follows:

> "Third. All the rest, residue and remainder of my Estate, both real, and personal, of every name, nature,

kind and description, I give, devise and bequeath unto my following brothers and sisters to share and share alike:

| | |
|---|---|
| Jennie Ella Kelley | Bakersfield, Vermont |
| Cora May Casavant | Richford, Vermont |
| Hattie Ann Young | Enosburg Falls, Vermont |
| Harry Frederick Miner | Island Pond, Vermont |
| Leon Archie Miner | Albany, New York |
| Oren Sylvester Miner | Richford, Vermont |
| Herbert Elmer Miner | Newport, Vermont |

In the event any of the above named brothers and sisters shall predecease me, then I direct that his or her or their respective shares shall be divided equally among the survivors thereof."

All of the residuary legatees with the exception of Cora May Casavant and Leon Archie Miner predeceased the testator. On final settlement of the estate by the executor the probate court for the district of Franklin decreed the residue of the estate to the two above-named surviving legatees. The appellants, daughters of Herbert Elmer Miner, who deceased on November 4, 1961, then appealed from the decree of the probate court to the Franklin county court. The county court on its findings sustained the action of the probate court and dismissed the appeal which resulted in the further appeal to this Court.

The appellants maintain that the bequest of the residue of the testator's estate is a gift *per stirpes* of the named individuals with a right of representation on the part of the children of the named deceased brothers and sisters. If true, the appellants would be entitled in equal amounts to the share of their deceased father, Herbert Miner. The appellees, to the contrary, contend that they (Cora and Leon) as the surviving sister and brother are each entitled to one-half of the residue under the terms of the will.

Frank D. Miner's father was married three times. There were twelve children born to these marriages. On May 4, 1959, the date on which the testator executed his will, seven of his brothers and sisters were then living. These are the persons named in the residuary clause. On April 8, 1968, the testator executed a codicil to his 1959 will naming his brother, Leon A. Miner, executor of his estate in place of his sister, Jennie Ella

Kelley, who had deceased. Other than this, he made no change or amendment to his original will.

In construing the will the first and chief object is to ascertain the intention of the testator, from the language used, since so far as it may be legally carried out, that governs. *In re Estate of Valiquette,* 122 Vt. 350, 364, 173 A.2d 832 (1961). Force and effect must be given to every part of the will, if possible, since it is not to be presumed that the testator used an unnecessary word or one to which no proper force can be given. To determine the intention of the testator, the court is to take the instrument by its four corners, consider it in all its parts, and give effect to its language read in the light of the relation of the parties concerned and the circumstances attending its execution. *In re Estate of Hayward,* 117 Vt. 313, 316, 91 A.2d 559 (1952); *In Re Trust Estate of Harris,* 120 Vt. 399, 404–405, 141 A.2d 653 (1958). The whole paragraph must be read together and proper effect given to every part. *In re Thayer's Estate,* 99 Vt. 204, 207, 130 A. 683 (1925).

*In re Walbridge's Will,* 102 Vt. 429, 432, 150 A. 126 (1930), we held that "[t]he grammatical construction of a will is to be regarded, and will not be departed from unless it would lead to an absurdity, or unless there is enough in the will to satisfy the mind that it was not the intention of the testator to have it so construed."

The appellants argue that the phrase "among the survivors thereof" is to be construed to mean that the share of any deceased brother or sister should be divided among the children of said deceased legatee. The interpretation claimed for the phrase by the appellees is that upon the death of any named brother or sister his or her share is to be divided among the surviving brothers and sisters.

That a will speaks as of the time of the testator's death is a general rule of probate law everywhere recognized and approved by this Court. And a will is ordinarily to be given effect as if it was executed immediately before the testator's demise. *In re Walbridge's Will, supra,* 102 Vt. at 431.

The only legatees mentioned in the deceased's will were his seven brothers and sisters who were living in 1959. Previously,

between 1940 and 1950, three brothers and one sister had passed away leaving surviving them around ten children. And in May, 1959, there were an additional fourteen children of the testator's seven living brothers and sisters.

The testator's will was drawn by a lawyer. The paragraph bequeaths the residue to "my following brothers and sisters." On August 29, 1969, the date the testator died, one brother and one sister survived him. We find no language which expresses an intention of the testator that the children of any of the deceased brothers and sisters were to inherit the share of their parents. In fact two brothers, Oren and Harry, died in 1964 and 1968, respectively, without issue. This fact must have been well known by the testator in 1968 when he executed a codicil to his will nominating a different executor. The codicil was drawn by an experienced member of the bar, and no other amendments were made to the will. Even though there had been a change in circumstances since 1959, sufficient time had intervened to permit a change of intentions by the testator if he had desired to make them.

It is very apparent that the testator did not intend that his nephews and nieces would inherit the share of their parents named in the residuary clause of the will. Words or language on which such an intention can be based are lacking. He made no mention or provision for such disposition of his estate, either to those nephews and nieces or to those whose parents had died prior to the date of the will.

To adopt the appellants' view, would result in preferential treatment to some of the nephews and nieces as against the others. The interpretation of the paragraph in question negates any such intention. Furthermore, it would leave the shares of Oren and Harry who died without issue in a state of undeclared disposition—a situation which the testator intended to prevent by the explicit language he used in the residuary clause which gave their shares to his surviving brothers and sisters.

We hold that the plain meaning of the language used in the last paragraph of Article III of the will is that the testator intended that the share of a deceased brother or sister was to be divided among the surviving brothers and sisters. The testator was making survivorship a condition rather than

giving a fee interest in his estate to each legatee. If his intention had been otherwise, it was not necessary to say anything about survivorship and to make the gift *per stirpes*, the testator would not have used the paragraph referred to. The use of the word "survivors" and the absence of the word "heirs" shows a clear intent that the testator wanted his surviving brothers and sisters to take the residue.

■ The appellants contend the language of the will and 14 V.S.A. § 558 require that the shares of named deceased brothers and sisters be distributed to the children of such brothers and sisters. The statute referred to is to prevent the lapse of a devise or legacy to a person who dies leaving issue who survives the testator. In that event the statute provides that the share of the deceased legatee is given to such issue "unless a different disposition is required by the will." Here, as we have pointed out, the language of the residuary clause of the will does require a different disposition than that provided by the statute. In this situation, the statute, as the appellants readily admit in their brief, has no application. For this reason, also, the cases of *In Re Estate of White*, 127 Vt. 28, 238 A.2d 791 (1968), and *In Re Estate of Valiquette*, *supra*, relied upon by the defendants are clearly distinguished from the case at bar.

The appellants requested the trial court to answer the question of whether the testator intended to die intestate. The court answered in the affirmative but stated the question was immaterial since the event contained therein did not occur. The appellants argue that this statement of immateriality to the construction of the will was error. They cite *In Re Trust Estate of Harris*, *supra*, which holds at 120 Vt. at 407 that "When a man disposes of his property by will, it is fair to presume that he does not intend to die intestate. . . ."

■■ However, at the time of the testator's death which is when the "will speaks" there were two residuary legatees living. To say that none of the seven legatees would survive the testator and thus create intestacy as to the residue of his estate is to rely on speculation and the happening of events which might not necessarily happen and did not. If it had occurred, there is no reason to believe but that the testator would have executed a new will. Moreover, the effect of any

490

presumption of intent is overcome by the wording of the will and the question is immaterial to the issue before us.

The appellants further requested the county court to answer two other questions namely:

> "2. Did the testator intend that the children of deceased brothers and sisters named in the Will, would take by right of representation, the share of such brother or sister predeceasing the testator?"

> "4. Did the testator, after naming his brothers and sisters as residuary legatees, intend that no representative of a deceased brother or sister should take anything under the Will . . . ?"

The answer to each question was in the negative. In disposing of the principle question raised by the appeal, it is apparent from what we have said that the conclusions of the county court were correct.

We find no error in the ruling of the probate court.

*Decree affirmed. Let the result be certified to the Probate Court for the District of Franklin.*